IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

William J. Grosjean,                                    Case No. 3:05 CV 7486

                        Plaintiff,         MEMORANDUM OPINION
                                           AND ORDER

            -vs-
                                           JUDGE JACK ZOUHARY

FirstEnergy,

                        Defendant.

Plaintiff brings this action against FirstEnergy alleging violations of the Uniformed Services

Employment and Re-employment Rights Act, 38 U.S.C. §§ 4301 *et seq.* (USERRA).  Specifically,

Plaintiff alleges violations of 38 U.S.C. §§ 4311(a) and (b).  The Court has jurisdiction pursuant to

28 U.S.C. § 1331.  Defendant now moves for summary judgment on all claims (Doc. No. 33), and

Plaintiff moves for partial summary judgment on Defendant's alleged violations involving Plaintiff's

2004 performance evaluation (Doc. No. 42).

## FACTUAL BACKGROUND

Plaintiff enlisted with the United States Army in 1965, served three years on active duty and

two years on standby, and joined the United States Army Reserves (Reserves) in 1970.  Plaintiff

served continuously with the Reserves until July 2005.  While serving in the Reserves, Plaintiff was

employed by Defendant as an Associate Maintenance Planner.  As a member of the Reserves, Plaintiff

periodically took military leave.

Plaintiff's supervisor, Rob Warner, completed a written performance evaluation for Plaintiff, covering the 2004 calendar year.  Warner's supervisor, Robert Grosjean, and Steven Smith, the plant manager, approved the evaluation, which rated Plaintiff "partially effective" and contained the following (Warner Dep. Ex. 5):

> [Plaintiff] was also due for a military leave of absence during this time which created another obstacle and helped reinforce the decision to reassign the contract. [Plaintiff] had a significant amount of time off work during the second half of the year due to vacation and his military leave.  I feel this had a negative effect on his performance and his ability to show any improvement.

As a result of the "partially effective" rating, Plaintiff was not eligible for incentive compensation awards (Warner Dep. 84-86, Ex. 16).

Plaintiff met with Warner in March 2005 to discuss the evaluation, and in their discussion, Warner again referred to Plaintiff's military service as an obstacle (W. Grosjean Dep. Ex. B).  Plaintiff complained to the Human Resources Department in April 2005 and filed an internal complaint in May 2005.  Finally, in June 2005, Defendant reviewed Plaintiff's complaint and determined the military references were improper and deleted them from the evaluation.  Defendant also determined Plaintiff's rating should be raised from "partially effective" to "effective," and he should be reimbursed for all compensation he would have received with an "effective" rating.  Defendant paid Plaintiff $5,452 for his lost compensation on June 22, 2005.  However, the non-military negative comments about Plaintiff's performance remained in the revised evaluation, which was labeled "June 2005 revised."

At the same time Plaintiff received his "partially effective" evaluation, he was also placed on a development plan.  Development plans are created to improve an employee's job performance and are not a form of discipline, but Plaintiff objected to the development plan because he believed he was

placed on the plan due to his military service and his prior complaints of discrimination (W. Grosjean Dep. 69; Rinkowski Dep. 75).

Plaintiff received a mid-year evaluation in September 2005 (W. Grosjean Dep. Ex. J) and he was again rated "partially effective."  This evaluation did not refer to his military service and it set forth specific examples of Plaintiff's performance issues, including his difficulty managing special assignments, failure to achieve timely results, and insufficient progress on certain projects.  Plaintiff disputed the evaluation's findings, stating he completed his special assignments and that he believed his work performance was satisfactory.  Plaintiff complained, in writing, that this evaluation was discriminatory and in retaliation for his prior complaints. Following this evaluation, Plaintiff received another development plan setting forth goals for the second half of 2005.  Plaintiff objected to the plan and refused to sign the accompanying documents.

In November 2005, Plaintiff applied for an open position as "Associate Maintenance Planner/Maintenance Planner" but did not receive an interview. The credentials of the successful candidate for this advertised position would determine which job title would be given (Rinkowski Dep. 81-95).  Plaintiff already held the position of Associate Maintenance Planner, and employees are not eligible to apply for jobs they already hold.  *Id.*  Nor could Plaintiff  "apply" for a position as Maintenance Planner; rather, promotions within the Maintenance Planner category are earned.  *Id.*

Also in November, Plaintiff met with Warner and Daniel Rossero, Warner's new supervisor, to discuss Plaintiff's work performance.  They told Plaintiff his performance needed to improve and, if it did not improve, he could face termination.  They also asked him to submit an action plan outlining Plaintiff's own strategy to improve his performance.  Plaintiff reiterated to Warner and Rossero his belief that he was being discriminated against because of his military service.

3

Two days after the meeting with Warner and Rossero, Plaintiff sent a letter to Rossero indicating that he intended to consult with his attorney and anyone wishing to discuss his past or current performance issues should contact his attorney (W. Grosjean Dep. Ex. L).  In response, Rossero stated, "[y]our attorney is not now, nor will he be, included in [the performance improvement] process" and that Plaintiff must meet all performance goals and expectations in order to keep his position with the company (W. Grosjean Dep. Ex. M).

In Plaintiff's 2005 year-end evaluation, he received a "not effective" rating and the evaluation detailed his performance failures, including difficulties completing assignments on time, mismanagement of contractor work, lack of cooperation, and failure to meet expectations (W. Grosjean Dep. Ex. P).  He was issued another development plan for the first half of 2006.  Plaintiff questioned the basis of the evaluation, believing he had successfully completed the projects listed in his evaluation, and requested specific performance information from Warner.  Warner did not respond to the request.

Plaintiff's mid-2006 evaluation was no better (Rossero Dep. Ex. 60).  It again rated his performance as "not effective" and contained specific examples of poor performance, including inability to follow directions, meet expectations, and complete assignments as expected.  *Id*.  In June 2006, shortly after the completion of Plaintiff's evaluation, Defendant terminated Plaintiff's employment.  The evidence is conflicting as to who made the decision to terminate Plaintiff, but may have included Warner, Rossero, Smith, and Elaine Rinkowski, the local Human Resources representative.

Plaintiff believes the mid-2006 evaluation also incorrectly reflected his job performance.  He submitted an action plan to Warner, but claims he was denied the overtime necessary to keep up with

4

his assignments.  He alleges he was the best at completing and turning in daily worksheets but received lower ratings than other non-military planners.

Plaintiff filed this action in December 2005, alleging USERRA violations.  After his termination, he filed a Second Amended Complaint in August 2006.

## SUMMARY JUDGMENT STANDARD

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  *Id.* When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## LAW AND ANALYSIS

USERRA "prohibits discrimination against military veterans on the basis of their military service and attempts to minimize the disadvantages to their civilian careers as a result of such service." *Curby v. Archon*, 216 F.3d 549, 556 (6th Cir. 2000); 38 U.S.C. § 4301(a).  Section 4311 of USERRA states in pertinent part:

> (a) A person who is a member of, . . . performs, has performed, . . . or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, performance of service, . . . or obligation.

5

(b) An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter; (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter; (3) has assisted or otherwise participated in an investigation under this chapter; or (4) has exercised a right provided for in this chapter . . .

(c) An employer shall be considered to have engaged in actions prohibited - (1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; or (2) under subsection (b), if the person's (A) action to enforce a protection afforded any person under this chapter, . . . or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, . . . or exercise of a right.

"The Congressional Record and the courts which have interpreted USERRA indicate that the burden-shifting framework approved by the Supreme Court in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401, 103 S. Ct. 2469, 76 L. Ed.2d 667 (1983), is used to determine whether an employer discharged a reservist in violation of USERRA." *Brandsasse v. City of Suffolk, Va.*, 72 F. Supp. 2d 608, 617 (E.D.Va. 1999) (citations omitted); *but see Smith v. Noramco of Delaware, Inc.*, No. 02-1615-KAJ, 2004 WL 1043711 (D.Del. May 3, 2004).  In accordance with *Transportation Management*, to establish a violation of USERRA, Plaintiff is required to establish that his military service was a motivating factor in an adverse employment action.  *Curby*, 216 F.3d at 557 (citing *Brandsasse,* 72 F. Supp. 2d at 617).  A motiving factor is one that "a truthful employer would list if asked for the reasons for its decision." *Brandsasse*, 72 F. Supp. 2d at 617 (citing *Kelley v. Maine Eye Care Associates*, *P.A.*, 37 F. Supp. 2d 47, 53-55 (D.Me. 1999)).  Once Plaintiff establishes Defendant's motivation, the burden shifts to Defendant to show, by a preponderance of the evidence, that it would have taken the same action in the absence of Plaintiff's military service. 38 U.S.C. §

4311(c)(1); *Coffman v. Chugach Support Services, Inc.*, 411 F.3d 1231, 1238-39 (11th Cir. 2005); *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1014-15 (Fed. Cir. 2001) (unlike Title VII evidentiary burdens, USERRA actions shift both the burden of production and persuasion to the employer).

The Court will first address Plaintiff's Motion for Partial Summary Judgment, which requests the Court find Defendant's 2004 evaluation of his job performance violated USERRA.  The Court will then address Defendant's Motion regarding the remaining discrimination allegations in Count One and the retaliation allegations in Count Two.

2004 Evaluation Discrimination Claim

Defendant does not dispute Plaintiff's service in the Reserves, that his military obligations required absences from his employment, or that his poor performance evaluation denied him a benefit of employment. The parties do, however, dispute whether Plaintiff's military service was a motivating factor for his poor evaluation.  A motivating factor "is one of the factors that a truthful employer would list if asked for the reasons for its decision." *Martin v. AutoZone, Inc.*, 411 F. Supp. 2d 872, 879 (S.D. Ohio 2005) (internal citation omitted).  Specifically, military service is a motiving factor if Defendant "relied upon, took into account, considered, or conditioned its decision" on Plaintiff's military-related absence.  *Robinson v. Morris Moore Chevrolet-Buick, Inc.*, 974 F. Supp. 571, 576 (E.D. Tex. 1997) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241-42 (1989)).  Plaintiff is not required to show that his military service was the **sole** motivating factor, but must only show it was **a** motivating factor.  *Brandsasse*, 72 F. Supp. 2d at 619 (citing *Gummo v. Village of Depew, NY*, 75 F.3d 98, 106 (2nd Cir. 1996)).

Here we have direct evidence of Warner's improper motivation in completing Plaintiff's evaluation.  The evaluation itself negatively referenced Plaintiff's military leave, and cited it as a cause for Plaintiff's poor performance (W. Grosjean Dep. Ex. 5).  It is clear, from the evaluation and Warner's testimony, that Plaintiff's military-related absence was taken into account, and further was a factor for his "partially effective" rating. Therefore, Plaintiff provides sufficient evidence that his military service was a motivating factor in his performance evaluation.

The burden of production and persuasion now shifts to Defendant. *Gagnon v. Sprint Corp.*, 284 F.3d 839, 852 (8th Cir. 2002), abrogated on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  Defendant must prove by a preponderance of evidence that it would have rated Plaintiff "partially effective" even if he had not been in military service.  38 U.S.C. § 4311(c)(1); *Robinson*, 974 F. Supp. at 576.  Defendant asserts that Plaintiff's actual work performance for the 2004 evaluation period justified his "partially effective" rating, even absent his military service, and that Defendant would have rated Plaintiff the same.

While Warner testified he believes Plaintiff deserved a "partially effective" rating, Warner does not say he would have still rated Plaintiff the same if Plaintiff's military leave was ignored. Indeed, Warner's explicit comments in the 2004 evaluation, such as "I feel [Plaintiff's vacation and military leave] had a negative effect on his performance and his ability to show any improvement" (Warner Dep. Ex. 5), indicate Plaintiff's military leave during 2004 was a negative factor which significantly contributed to his inability to complete tasks on time.  As an example of Plaintiff's poor performance, Warner cited Plaintiff's inability to properly manage a janitorial and landscaping contract, and the military leave was a reason Defendant reassigned the contract to another employee. When all references to Plaintiff's military leave and time away from his employment are removed,

8

there is very little else left in the evaluation.  Defendant provides no specifics on how Plaintiff's evaluation would be the same but for the negative impact of the military leave.

Instead, Defendant relies on Robert Grosjean, Warner's supervisor, who reviewed the 2004 evaluation, and who stated:  "I still believe that the performance that Bill had during that period was partially effective.  I agreed and understood that it was appropriate to change it to effective based on some of the terminology that might have been used in it" (R. Grosjean Dep. 40).   This statement, like Warner's statement, indicates Plaintiff's performance in 2004 merited a "partially effective" rating, but does not state he came to this conclusion after screening out Plaintiff's military leave.

Rather, the evidence firmly establishes Plaintiff's military leave was a substantial factor in the initial 2004 evaluation.  The Court also notes that, while insufficient on its own, Defendant's rating change from "partially effective" to "effective" as soon as the military references were deleted from the evaluation, further supports this holding.  If Defendant truly believed Plaintiff deserved a "partially effective" rating, it could have maintained the rating, deleted the military references, and defended the evaluation by including specific examples of Plaintiff's "partially effective" behavior, or cited other employees who were rated "partially effective" for similar deficiencies.  It did not do so.

Defendant offers insufficient evidence that Plaintiff's rating would be the same without consideration of his military service.  No reasonable jury could find for Defendant on this issue, and therefore partial summary judgment is granted as to the 2004 performance evaluation.  Damages, if any, will be determined at trial.

Remaining Discrimination and Retaliation Claims

Defendant requests summary judgment as to the remaining 38 U.S.C. § 4113(a) discrimination claims in Count One and the 38 U.S.C. § 4113(b) retaliation claims in Count Two.  Defendant's Motion is granted in part and denied in part.

To establish a claim under 38 U.S.C. § 4113(a) and (b), the requirements are the same. *Gannon v. Natural R.R. Passenger Corp.*, 422 F. Supp. 2d 504, 510 (E.D. Pa. 2006) (citing *Gagnon*, 284 F.3d at 853-54). Under Section 4113(a), Plaintiff must show he was a member of the military and his military service was a motivating factor in an adverse employment action.  Under Section 4113(b), Plaintiff must show he took an action protected by USERRA, and this action was a motivating factor in an adverse employment action.  The burden then shifts to Defendant to show, by a preponderance of evidence, that it would have taken the same action in the absence of Plaintiff's USERRA-related activity (military service or protected activity). 38 U.S.C. §4113(c)(1) and (2).

Plaintiff claims Defendant discriminated and retaliated against him when it gave him poor performance evaluations, placed him on development plans, denied him a promotion, and terminated his employment.  Defendant acknowledges that it knew of Plaintiff's military service, and that Plaintiff's termination and performance evaluations are adverse employment actions.  However, Defendant claims the development plans and denial of a promotion are not adverse employment actions, and that Plaintiff is unable to establish his USERRA-related actions as motivating factors for any of Defendant's actions.

USERRA does not include a definition of an "adverse employment action" and the parties dispute the definition of an "adverse employment action" to be applied.  Plaintiff asks the Court to apply the definition used in *Burlington Northern & Santa Fe Railroad Co. v. White*, __ U.S. ___, 126

10

S. Ct. 2405 (2006) (in Title VII retaliation cases, a retaliatory action occurs when a "reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'"). Defendant asks the Court to define an adverse employment action as "a materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Schmauch v. Honda of America Manufacturing, Inc.*, 295 F. Supp. 2d 823, 838 (S.D. Ohio 2003) (internal citations omitted).

Under either proposed definition, placing Plaintiff on a development plan is not an adverse employment action. Even under the broader definition of *Burlington*, the harm from the action cannot be trivial, and minor annoyances are not adverse employment actions. *Burlington*, 126 S. Ct. at 2407. To determine whether the action causes a "material" harm, the Court looks to the context of the action. In this case, Plaintiff was given a development plan to help improve his performance. Plaintiff admits the development plan is not disciplinary in nature and there is no evidence of a harmful effect on him. He simply points out that not all employees are placed on development plans and he did not receive a plan until he was rated "partially effective." However, this is because the plans are designed to help improve performance. Such plans, specifically in this case, did not result in discipline, punishment or material harm and are not adverse employment actions.

Similarly, the denial of a promotion, in this case, is inapplicable because Plaintiff applied for a position he already held. Whether the successful applicant was hired as a Maintenance Planner or Associate Maintenance Planner depended upon the applicant's prior experience (Rinkowski Dep. 85). Defendant admittedly denied Plaintiff the opportunity to interview, but if Plaintiff had received an interview he would have been interviewing for an Associate Maintenance Planner position, the same

11

position he already held.  As an Associate Maintenance Planner, Plaintiff  "was already in the family of maintenance planners" and promotions within a job "family" are earned based upon the employee's performance and responsibilities, not through an application process (Rinkowski Dep. 80-81, 85). Therefore, the denial of an interview is not a denial of a promotion.  An interview would only have given Plaintiff an opportunity to apply for the same position he already held and cannot be an adverse employment action under either proposed definition.

Even though the parties do not dispute that Plaintiff's termination and poor performance reviews were adverse employment actions, Plaintiff must still show his USERRA-related actions motivated Defendant to give him poor reviews and terminate his employment.  Improper motivation under USERRA may be reasonably inferred from the following factors: (1) proximity in time between Plaintiff's military or protected activity and the adverse employment action; (2) inconsistencies between the proffered reason and other actions of Defendant; (3) Defendant's expressed hostility towards members protected by the statute together with knowledge of Plaintiff's military or protected activity; and (4) disparate treatment of certain employees compared to other employees with similar work records or offenses. *Sheehan*, 240 F.3d at 1014 (citing *W.F. Bolin Co. v. Nat'l Labor Relations Bd.*, 70 F.3d 863, 871 (6th Cir. 1995)).

The Court finds that Warner's expressed hostility, through the negative references to Plaintiff's military obligations in the 2004 evaluation, provides sufficient evidence to create a genuine issue of material fact as to whether Plaintiff's USERRA-related activities were a substantial or motivating factor in his later performance reviews and eventual termination.  The impermissible and improper considerations in the 2004 evaluation cast a shadow of doubt over Defendant's subsequent

actions, especially since Warner allegedly continued to participate in Plaintiff's 2005 and 2006 evaluations as well as the decision to terminate Plaintiff.

Defendant cites *Hollis v. Fleetguard, Inc.*, 668 F. Supp. 631 (M.D. Tenn. 1987) for the proposition that inferior work habits and poor job performance establish a legitimate reason for termination.  The Court finds *Hollis*, a Title VII case, followed the *McDonnell-Douglas* burden-shifting analysis, not the *Transportation Management* analysis, and that under the *Transportation Management* analysis Defendant must show more than a legitimate reason for the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Robinson*, 974 F. Supp. at 576.  Defendant must show that, without consideration of Plaintiff's USERRA-related actions, the adverse action would still have been taken.  Defendant has not met this burden.

While Defendant presents evidence of legitimate reasons for terminating Plaintiff's employment, Defendant has not established, as an uncontroverted fact, that it would have taken the same actions even if Plaintiff had not been in the Reserves or made complaints.  *Leisek v. Brightwood Corp.*, 278 F.3d 895, 900 (9th Cir. 2002) (summary judgment denied where the plaintiff's military leave was a reason for his termination and defendant had not established, as an uncontroverted fact, that it would have made the same decision without the military leave).  Therefore, whether Defendant would have taken the same actions absent Plaintiff's military service and protected actions, or whether Warner made improper considerations in these evaluations subsequent to June 2004, are genuine issues of material fact properly resolved by a jury.

For the above reasons, summary judgment is denied as to Plaintiff's discrimination and retaliation claims relating to his performance evaluations and termination, but granted as to Plaintiff's

13

discrimination and retaliation claims relating to his denial of a promotion and placement on development plans.

## CONCLUSION

Plaintiff's Motion for Partial Summary Judgment is GRANTED.  Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

        s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 30, 2007